UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:12-cv-194-RJC

| | |
|---|---|
| STEPHEN DWAYNE TUCKER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| DUANE TERRELL, ) | |
| Administrator, Avery/Mitchell ) | |
| Correctional Institution, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on Respondent's Motion for Summary Judgment on the claims presented by Petitioner in his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. For the reasons that follow, Respondent's Motion will granted and Petitioner's Section 2254 petition will be denied and dismissed.

**I.    BACKGROUND**

On May 9, 2011, Petitioner, now a prisoner of the State of North Carolina, appeared with counsel in Henderson County Superior Court to plead guilty to charges following negotiation of a written plea agreement with the State. During his plea colloquy, the state court summarized the following misdemeanor charges: one count for injury to personal property; three counts of failure to appear on a misdemeanor; aggressive driving; driving while license revoked; providing fictitious information to an officer, and resisting a public officer. The Court explained that Petitioner could receive a maximum of 240-days imprisonment if convicted of the misdemeanors. Petitioner acknowledged that he understood the maximum penalties. (Doc. No. 6-

2: Sentencing Tr. at 8-10).

The court noted the following felony counts to which Petitioner had agreed to plead guilty: One count of having attained the status of a habitual felon and assault with a deadly weapon inflicting serious injury. The court explained that because Petitioner was agreeing to plead guilty to the habitual felon status, under North Carolina's habitual offender law, each felony count was raised to a Class C felony and carried a maximum sentence of 261-months in prison. Petitioner admitted that he understood this maximum punishment. (Id. at 9-10).

The court next reviewed Petitioner's decision to plead guilty to two counts of felony failure to appear, and one count of felony breaking and entering a motor vehicle. It was explained that each were Class I offenses that were raised to a Class C under North Carolina's habitual offender law. The Court then discussed Petitioner's decision to plead guilty to one count of felony larceny of a motor vehicle and one count of felony possession of a stolen motor vehicle, which were each Class H felonies that were raised to Class C offenses under North Carolina's habitual offender law.

After summarizing these charges and potential penalties, the court explained that all told, given the discretion to run the sentences consecutively, the potential maximum punishment was 2,088 months for the felony convictions plus the 240 days for the misdemeanors. Petitioner then affirmed that he was choosing to personally plead guilty to all of the named-offenses, and that he was in fact guilty of each offense. (Id. at 10-11).

The court confirmed the Petitioner had reached a plea agreement with the State, and then the court summarized the terms of the plea agreement which provided that the parties agreed that all of the charges would be consolidated into one habitual felon case with a Class C offense

level. Next, Petitioner acknowledged that he was entering a knowing and voluntary plea to the charges of his own free will and with full understanding of what he was doing. (Id. at 11). The court then sentenced Petitioner to a term of 110 to 141 months' imprisonment. (Id. at 19). See also (Doc. No. 1-1: Transcript of Plea at 39-51). Petition did not file a direct appeal from this judgment.

On April 24, 2012, Petitioner filed a motion for appropriate relief ("MAR") in Henderson County Superior Court seeking a writ of coram nobis, and raising challenges to the legality of his conviction for having attained the status of a habitual felon. (Doc. No. 1 at 3). The state court denied relief in a written order filed on June 15, 2012. (Doc. No. 1-1 at 17). On July 18, 2012, the North Carolina Court of Appeals entered an order denying his petition for a writ of certiorari. (Id. at 1). The present federal habeas petition followed and the claims for relief will be discussed below.

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

B.  Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the requirements set forth in 28 U.S.C. § 2254, which provides in relevant part, that an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court's adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, supra (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well

4

outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

### III. DISCUSSION

#### A. Ground for Relief (1)

Petitioner argued before the state MAR court, as he does here, that the use of prior felony convictions to enhance his sentence as a habitual felon violates the due process clause, the right to equal protection, and runs afoul of the Eighth Amendment's prohibition on cruel and unusual punishment. See (Doc. No. 1 at 5 (incorporating arguments from his MAR [Doc. No. 1-1 at 23])).

The MAR court denied relief on this claim after obtaining a copy of his sentencing transcript and noting that Petitioner's "motion stated no detailed factual basis for his claims." (Doc. No. 1-1 at 17). The court of appeals denied his petition to review this MAR order.

The North Carolina General Assembly has expressly approved the charge of attaining the status of habitual felon. See N.C. Gen. Stat. § 14-7.1 et seq. The North Carolina appellate courts have explained that being a habitual felon under this statute denotes a status, and not a crime. Put simply, once habitual felon status is achieved, and the supporting felonies have not subsequently been invalidated, the status is confirmed and allows for a defendant's sentence to be enhanced for so long as the defendant is convicted of violating state law. See State v. Patton, 342 N.C. 633, 635 (1996) (being a habitual felon is not a crime but, rather, a status which subjects the defendant to increased punishment).

More to the point, for the purpose of resolving this claim in a federal habeas proceeding, the Court notes that the Supreme Court of the United States has repeatedly rejected challenges to

5

enhanced sentences—which are based on a defendant's status as a recidivist offender—on the grounds that such sentences do not violate the ex post facto clause, due process, equal protection, or double jeopardy. See, e.g., Spencer v. Texas, 385 U.S. 554, 559 (1967); Rummel v. Estelle, 445 U.S. 263, 265 (1980).

In addition to the challenge to his habitual offender enhancement, Petitioner argues for relief under a theory of coram nobis and he contends that his guilty plea was not voluntary and knowingly entered. On the former claim, the Court notes that this claim for relief will be dismissed for the simple reason that this Court has no authority to issue a writ of coram nobis regarding a state court judgment. See, e.g., Lowery v. McCaughtry, 954 F.2d 422, 423 (7th Cir. 1992) ("We may dispose at once of Lowery's contention that a federal court may issue a writ in the nature of a coram nobis annulling Georgia convictions."); Sinclair v. State of Louisiana, 679 F.2d 513, 514 (5th Cir. 1982) (per curiam) (internal citations omitted).

Petitioner's challenge to his guilty plea fares no better. A review of the sentencing hearing where Petitioner was placed under oath, and the Transcript of Plea form, executed by Petitioner under penalty of perjury, demonstrates that even before the state court began the plea colloquy, Petitioner was well aware of the maximum penalties and the consequences of foregoing trial and electing to plead guilty. And the trial court's review of the charges and potential penalties met with knowing agreement from Petitioner. Finally, Petitioner no doubt expressed an understanding that by choosing to waive his constitutional rights to test the State's evidence he would avoid a potential sentence of over 2000 months.

For the foregoing reasons, these claims will be denied.

B.   Ground for Relief (2)

Here, Petitioner argues that his sentencing enhancement for attaining the status of a habitual felon violates his right to be free from double jeopardy. This claim was rejected for the foregoing reasons stated in Ground 1: namely a sentencing enhancement, such as the one at issue here, does not implicate the guilt of the Petitioner, rather, the increased sentence is merely a sentencing enhancement. This claim regarding double jeopardy is denied.

    C.    <u>Ground for Relief (3)</u>

The substance of this final claim is that the Henderson County District Attorney's office had no authority to indict Petitioner as a habitual felon. (Doc. No. 1 at 27). This is yet a third challenge to the validity of recidivism enhancements and it must fail. It would have to follow that if the North Carolina Habitual Felon statute has been upheld thus far by higher courts, that a prosecutor would have discretion under the U.S. Constitution to seek an indictment for violation of the statute. Petitioner cannot fairly attribute a sinister motive in seeking an indictment for being a habitual felon. In fact, with the extensive nature of Petitioner's criminal history, the prosecutor could have easily chosen to offer nothing in the way of a plea bargain and simply decided to proceed to trial.

To the extent Petitioner moves the Court to order discovery in this matter to mine the conviction records emanating from Henderson County to locate a perceived disparity in those who are, and those who are not, indicted as habitual felons, in its discretion, the Court denies that request. <u>See</u> Rules Governing § 2254 Proceedings, Rule 6, 28 U.S.C.A. foll. § 2254.

For the reasons discussed herein, Petitioner's claims will be denied.

## IV. CONCLUSION

**IT IS, THEREFORE ORDERED** that:

1. Respondent's motion for summary judgment is **GRANTED**. (Doc. No. 5).

2. Petitioner's motion to deny Respondent's motion for summary judgment is **DENIED** as moot. (Doc. No. 12)

3. The petition for habeas corpus will be **DENIED** and **DISMISSED**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk of Court is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: September 6, 2013

Robert J. Conrad, Jr.
United States District Judge